UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN CHARLES MICHAEL, JR.,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action No. 17-12376

HON. MATTHEW F. LEITMAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

_____/

## **REPORT AND RECOMMENDATION**

    Plaintiff John Charles Michael, Jr. ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Supplemental Security Income under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #20] be DENIED and that Plaintiff's Motion for Summary Judgment [Docket #19] be GRANTED to the extent that the case is remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On November 27, 2013, Plaintiff filed an application for SSI, alleging a disability onset date of January 27, 2012[1] (Tr. 176). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on August 6, 2015 in Flint, Michigan before Administrative Law Judge ("ALJ") Joanne E. Adamczyk (Tr. 36). Plaintiff, unrepresented, testified, as did Vocational Expert ("VE") Judith Vendora (Tr. 42-61, 62-67). On March 2, 2016, ALJ Adamczyk found that Plaintiff was not disabled (Tr. 19-31). On June 5, 2017, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review in this Court on July 24, 2017.

## BACKGROUND FACTS

Plaintiff, born April 22, 1976, was 39 when the ALJ issued her decision (Tr. 19, 123). He received a GED and worked previously as a landscaper (Tr. 202). He alleges disability due to arthritis, depression, anxiety, and chronic back and left leg pain (Tr. 201).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

He lived in Flint, Michigan in a single family home with his mother (Tr. 42-43). Contrary to the information provided at the time of the application, he graduated from high school (Tr. 43). During his school years, he was placed in special education for reading problems (Tr. 43). He was able to read, write, and perform simple mathematical equations, but read slowly (Tr. 43). He had health insurance through the state (Tr. 44). He denied receiving public assistance or food stamps and did "odd jobs" when he felt well enough (Tr. 44).

---

[1]Plaintiff's alleged onset of disability date is one day after he was denied benefits in an earlier application (Tr. 38).

Due to chronic back and left leg pain, he was unable to perform full-time work (Tr. 44). The left leg pain was not related to the back pain but resulted from knee injuries sustained in a vehicle accident at the age of 21 (Tr. 44-45). Following the accident, a titanium rod was placed in his left knee (Tr. 45). He also experienced arthritis in other joints and sleep apnea (Tr. 45-46). He used a CPAP machine every night (Tr. 46).

Plaintiff was able to care for his personal needs but due to problems bending, his girlfriend had to help him put on pants (Tr. 46). He had not been referred to a neurologist (Tr. 47). He was able to drive long distances so long as he took frequent breaks (Tr. 47). He stood 5' 8" and weighed 400 pounds (Tr. 48). He had been prescribed physical therapy but quit after one day because the exercises made his condition worse (Tr. 48). He was able to make simple meals (Tr. 48). Mowing the lawn took two days due to back and knee problems (Tr. 48). He did his own laundry and took out the trash but did not do dishes (Tr. 49). He owned two dogs (Tr. 49). He denied medication side effects (Tr. 48). Plaintiff used a motorized cart while shopping but due to his dislike of crowds, he relied on his girlfriend to shop (Tr. 50). On occasions where he did his own shopping, his girlfriend accompanied him (Tr. 50). He visited with friends who lived close by on a daily basis (Tr. 50). He did not belong to a church or other social organization (Tr. 51). He watched television and listened to music (Tr. 51). Due to back cramps, he reclined for up to 45 minutes twice a day (Tr. 51). He coped with the back cramps first with a hot shower, then ice packs before reclining (Tr. 52). He was not sure whether he had Lyme's disease in the past or not (Tr. 52). His recent blood pressure readings had been "reasonable" (Tr. 53).

Plaintiff took psychotropic medication but his doctor had not suggested mental health counseling (Tr. 53). Certain psychotropic medication made him "angry for no reason" resulting in him screaming at his mother (Tr. 54). He experienced anxiety attacks in large

groups of people but did not experience hallucinations (Tr. 55). His doctor had suggested that he see a specialist for his knee but he lacked the gas money to go "down state" for an evaluation (Tr. 56). He used marijuana on a daily basis for pain control, noting that his doctors had refused to give him prescribed pain medication due to his previous addiction to Vicodin (Tr. 57). He denied alcohol use (Tr. 57). He was unsure of how much he could lift (Tr. 58). He was able to sit for up to five hours as long as he could "move around" (Tr. 59). He was able to stand for up to 15 minutes and walk up to one block (Tr. 59). He was able to ascend stairs with the help of a handrail (Tr. 59). He sometimes used a cane (Tr. 60). On a scale of one to ten, Plaintiff rated his knee pain at "four" and back pain, "seven" (Tr. 60). In addition to knee and back pain, Plaintiff experienced finger, ankle, and shoulder pain but noted that he received treatment for those conditions (Tr. 60).

*The ALJ noted that the medical transcript did not contain any support for Plaintiff's claim of finger and ankle pain and as a result, she could not take the conditions "into consideration" (Tr. 61). She noted that she would order both a psychological and physical examination for "some baseline [to] make a decision" (Tr. 61).*

Plaintiff then testified that he worked as a landscaper until the age of 21and later worked as a asphalt paver (Tr. 63). He noted that he was paid in cash for the paving work (Tr. 63).[2]

### B. Medical Evidence

#### 1. Treating Sources

February, 2012 treating records note Plaintiff's report of a right wrist injury resulting from a car accident nine days earlier (Tr. 304). Imaging studies were negative for fracture

---

[2]Plaintiff's FICA summary shows no income from 2010 forward (Tr. 185).

(Tr. 302). April, 2013 treating records state that Plaintiff was concerned about lead exposure due to the fact that he "currently work[ed] in a car restoration shop" where lead paint came in contact with his hands and arms" (Tr. 269). He was advised to seek protective measures from his employer (Tr. 269). June, 2013 imaging studies of the left knee and lumbar spine were negative for fracture or dislocation (Tr. 290, 321). The lumbar spine studies showed moderate degenerative disc disease of the upper lumbar spine (Tr. 290). Imaging studies of the left knee were negative for fracture or dislocation (Tr. 288). The same month, Plaintiff reported that he continued to smoke 10 to 14 marijuana cigarettes each day to calm his nerves (Tr. 265). The following month, Plaintiff reported that he "may have touched poison ivy" during a recent out-of-state trip, noting that he the trip involved "working in the woods" and "outside cutting grass" (Tr. 260).

The same month, Plaintiff was diagnosed with obstructive sleep apnea and advised to use a CPAP device (Tr. 270-272). September, 2014 imaging studies of the lumbar spine showed degenerative arthritis of the upper lumbar and thoracic spine (Tr. 356, 358). Michael T. Owczarzak, M.D. noted no limitations in walking or standing (Tr. 353). Imaging studies of the pelvis from the following month showed mild spondylosis (Tr. 349). A November, 2014 stress test was canceled due to Plaintiff's inability to walk for extended periods on a treadmill (Tr. 344).

January, 2015 physical therapy intake records note Plaintiff's report that "[u]p until three months [earlier] he was still completely unlimited in his activities" (Tr. 340). Plaintiff reported that he was self-employed making fishing sinkers and lures (Tr. 340). He was discharged from physical therapy the following month after failing to show up for any subsequent sessions (Tr. 335). May, 2015 records note a decreased motion of lumbar spine motion but no difficulty standing or walking (Tr. 329). July, 2015 imaging studies of the left

knee showed mild to moderate osteoarthrosis of the left knee with joint effusion (Tr. 324, 403). The same month, Dr. Owczarzak noted an unremarkable examination of the left lower extremity (Tr. 354). November 10, 2015 imaging studies of the left foot showed advanced degenerative irregularity with fragmentation and spur formation (Tr. 404). Plaintiff was referred for podiatry treatment (Tr. 404). A CT examination from the same month, noting Plaintiff's report or worsening pain" from a trauma 10 years earlier showed "severe osteoarthropathy with posttraumatic osseous remodeling and loss of the normal ankle, hindfoot, and midfoot architecture" (Tr. 404, 406). The study also showed "numerous large fragments within and around the joints" (Tr. 406). In December, 2015, Dr. Owczarzak noted Plaintiff's report of continued left lower extremity pain (Tr. 396). Dr. Owczarzak noted no difficulty in walking or standing but a decreased range of lumbar and thoracic spine motion (Tr. 396). An examination of the upper extremities was unremarkable (Tr. 396). January, 2016 records by Dr. Owczarzak note Plaintiff's report of ongoing left foot pain as a result of the left ankle/foot injury (Tr. 400).

### 2. Non-Treating Sources

In January, 2014, Matthew Dickson, Ph.D. performed a consultative psychological evaluation on behalf of the SSA, noting Plaintiff's report of arthritis, depression, and back and left leg pain (Tr. 297). Dr. Dickson noted that Plaintiff presented a Michigan chauffeur's license to establish his identity (Tr. 297). Plaintiff reported that in addition to the physical health problems, he experienced mood swings and anxiety attacks" characterized by crying, anger, or using poor judgment (Tr. 297). He admitted to criminal convictions for uttering and publishing, grand theft auto, breaking and entering, felonious assault, and drug possession but denied being sent to prison (Tr. 297). He denied current alcohol use (Tr. 297). Dr. Dickson noted a left-sided limp (Tr. 298). He concluded that Plaintiff's concentrational

abilities were "not overtly impaired" (Tr. 299). He noted that Plaintiff's ability to interact with others and deal with stress was mildly impaired (Tr. 299). Later in January, 2014, Rom Kriauciunas, Ph.D. performed a non-examining review of the treating records, finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence or pace (Tr. 94).

In October, 2015, Karen Marshall, Psy.D. performed a consultative examination at ALJ Adamczyk's request, noting average self-esteem and an appropriate affect (Tr. 387). Plaintiff reported that he hyperventilated on occasion when in large groups but did not experience anxiety at home (Tr. 387). She concluded that Plaintiff could understand, remember, and complete simple to complex tasks" but could "experience an increase in restlessness and anxiety" in a crowded workplace (Tr. 388). Dr. Marshall noted that Plaintiff "frequently shifted his posture" due to discomfort while sitting (Tr. 386).

The following month, Michael Geoghegan, D.O. performed a consultative physical examination on the request of ALJ Adamczyk, noting Plaintiff's report of lower extremity injury at the age of 21 resulting in a three month hospitalization (Tr. 374). Plaintiff reported that he could walk two blocks, stand for up to 10 minutes, and sit for up to 20 (Tr. 374).

Dr. Geoghegan noted a full range of motion and full muscle strength except for 4/5 strength in the lower left extremity (Tr. 375-376). He noted a "severe left-sided limp" (Tr. 377). He found that Plaintiff could lift up to 20 pounds frequently and up to 50 occasionally; carry 10 pounds frequently and up to 50 occasionally; sit for six hours in an eight-hour workday; stand for three (requiring a sit/stand option every 20 minutes); and walk for one (with a sit/stand option every 10 minutes) (Tr. 379). He found that Plaintiff did not require a cane to ambulate (Tr. 379). He limited Plaintiff to occasional bilateral pushing/pulling and occasional operation of foot controls with the left lower extremity (Tr. 380). He limited

Plaintiff to occasional postural activity with the exception of a preclusion on the use of ladders and scaffolds (Tr. 381). He found that Plaintiff could be exposed to potential environmental hazards and extreme conditions on a frequent basis except for a preclusion on unprotected heights and a limitation of occasional exposure to vibration (Tr. 382). He found that Plaintiff was unable to walk at a reasonable pace on rough or uneven surfaces (Tr. 383).

### C. Vocational Expert Testimony

VE Vendora classified Plaintiff's previous work as a landscaper as unskilled and exertionally heavy[3] (Tr. 64). The ALJ then described a hypothetical individual of Plaintiff's age, educational level, and work experience with the following work-related limitations:

> [A]ssume a person . . . who could perform a restricted range of light work, lifting up to 20 pounds occasionally, and 10 pounds frequently. Standing and walking four of eight hours, and sitting four of eight hours. Who would need a sit/stand option approximately once an hour to change position. . . . This individual cannot operate foot controls with the left lower extremity. Cannot climb ladders, ropes or scaffolds. Can occasionally climb ramps or stairs with the handrail. Cannot kneel, crouch or crawl. Cannot work around machinery or at unprotected heights. Is limited to unskilled work with no production line or pace work such as on assembly line. And a low stress job, and by that I mean only occasional changes in the work setting, or occasional decision making. No work with the public. And only occasional interaction with co-workers and supervisors. (Tr. 64-65).

The VE replied that the above-described individual would be unable to perform Plaintiff's past relevant work, but would allow for work as an administrative support clerk (225,000 jobs in the national economy); stock sorter (40,000); and bench assembler (100,000) (Tr. 65-

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

66).

The VE stated that if the above-described individual were limited to *sedentary* work requiring "[l]ifting 10 pounds occasionally and less than [10] frequently[;] [s]tanding and walking . . . two hours in an eight-hour workday[] and sitting six of eight hours," the individual could perform the *sedentary* work of an administrative support clerk (197,000); packer (65,000); and bench assembler (33,500) (Tr. 66). The VE stated that the need take up to a 45-minute unscheduled breaks two or three times each workday, or the need to miss up to five days of work each month would preclude all competitive employment (Tr. 66-67).

### D. The ALJ's Decision

Citing the medical records, the ALJ determined that Plaintiff experienced the severe impairments of "degenerative disc disease of the thoracolumbar spine, degenerative joint disease of the bilateral knees, unspecified anxiety disorder, cannabis abuse disorder, and obesity" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). The ALJ found that the conditions of hypertension and obstructive sleep apnea did not cause more than minimal limitation (Tr. 21). She found that as a result of anxiety, Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence or pace (Tr. 22).

She found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [C]an stand and walk four of eight hours, and sit four of eight hours. He needs the opportunity for a sit/stand option, once an hour to change position. He cannot operate foot controls with the left lower extremity. The claimant cannot climb ladders, ropes or scaffolds and can only climb ramps or stairs occasionally with a handrail. He cannot kneel, crouch or crawl; he cannot work around machinery or at unprotected heights. The claimant is limited to unskilled work in a low stress environment, meaning only occasional decision

>  making or changes in the work setting. He cannot perform a job that requires a production rate or pace work such as on an assembly line. The claimant is also limited to jobs that do not require interaction with the public and only occasional interaction with co-workers and supervisors (Tr. 23).

Citing the VE's job findings, the ALJ found that Plaintiff could perform the jobs of administrative support clerk, stock sorter, and bench assembler (Tr. 30, 65-66). The ALJ found that because of a "significant change" in Plaintiff's condition since the prior disability determination, she was not bound by the January 26, 2012 administrative findings (Tr. 24).

The ALJ discounted the allegations of disability. She cited Dr. Dickson's report that Plaintiff was able to make money by shoveling snow in the month before the January, 2014 consultative examination (Tr. 26). The ALJ noted that Plaintiff reported to a physical therapist in January, 2015 that he had been "completely unlimited in his activities" until three months earlier and that he was self-employed making fishing sinkers and lures (Tr. 27). She noted that Plaintiff declined to return for treatment after an initial physical therapy session (Tr. 27). She accorded only "partial weight" to Dr. Geoghegan's October, 2015 consultative opinion that Plaintiff was unable to walk for more than one hour in an eight-hour workday (Tr. 28). The ALJ found that Dr. Geoghegan's opinion was "not supported by objective medical evidence" (Tr. 28).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

In his sole argument for remand, Plaintiff contends that the ALJ erred by failing to consider November, 2015 imaging studies showing severe osteoarthropathy and other complications of a former injury to the left foot. *Plaintiff's Brief,* 14-17 (*citing* Tr. 404, 406), *Docket #19,* Pg ID 474. Defendant concedes that the ALJ did not cite the November, 2015 studies in her determination but argues that the omission of discussion does not undermine the non-disability finding. *Defendant's Brief,* 6-10, *Docket #20,* Pg ID 486. Defendant argues that the ALJ's failure to acknowledge the studies, at most, amounts to harmless error. *Id.* at 10.

The following is a chronological summation of the relevant facts:

In his application for SSI, Plaintiff alleged disability resulting from arthritis, depression, anxiety, and chronic back and left leg pain (Tr. 201). At the August 6, 2015 administrative hearing, ALJ Adamczyk noted that the medical transcript did not contain any support for Plaintiff's claim of finger and ankle pain (Tr. 61). She stated that she would order both psychological and physical consultative examinations before making a determination (Tr. 61). She then took vocational testimony, including the VE's finding that a limitation to standing and walking four hours a day and sitting for four hours (accompanied by a number of non-exertional limitations) would allow for a significant range of exertionally light work (Tr. 64-66). These limitations formed the basis for the RFC found in the administrative opinion[4] (Tr. 23).

---

[4]The ALJ then presented a second set of limitations (incorporating the non-exertional limitations from the first question) in which the hypothetical individual was limited to sedentary work requiring standing and walking for two hours in an eight-hour workday and sitting for six with a sit/stand option allowing a change of position once an hour (Tr. 66).

At the ALJ's direction, Dr. Geoghegan conducted a post-hearing consultative examination and functional assessment in October, 2015, finding in relevant part that Plaintiff could sit for six hours in an eight-hour workday; stand for three (requiring a sit/stand option every 20 minutes); and walk for one (with a sit/stand option every 10 minutes), but did not require a cane to ambulate (Tr. 379). He limited Plaintiff to occasional bilateral pushing/pulling and occasional operation of foot controls with the left lower extremity (Tr. 380). He found that Plaintiff was precluded from work involving unprotected heights and limited him to occasional exposure to vibration (Tr. 382).

As part of a separate exhibit, treating medical records for November and December, 2015 were also submitted after the hearing for the ALJ's review. The records include November, 2015 imaging studies of the left foot showing advanced degenerative irregularity with fragmentation and spur formation, and a followup CT examination the same month showed "severe osteoarthropathy with posttraumatic osseous remodeling and loss of the normal ankle, hindfoot, and midfoot architecture" (Tr. 404, 406). The same study also showed "numerous large fragments within and around the joints" (Tr. 406). December, 2015 treating records from the same exhibit note no difficulty in walking or standing but a decreased range of lumbar and thoracic spine motion (Tr. 396).

On March 2, 2016, the ALJ found that Plaintiff was not disabled (Tr. 19-31). The ALJ gave limited weight to Dr. Geoghegan's October, 2015 consultative assessment, noting that the finding that Plaintiff was limited to only one hour walking in an eight-hour period was not supported by the objective medical evidence (Tr. 27-28). She stated further that "the record does not contain evidence to support this opinion back to the alleged onset of disability in 2012" (Tr. 28). The ALJ's determination does not discuss or acknowledge the November, 2015 imaging studies or any other records from the same exhibit (Tr. 396-406).

It is well settled that an "'ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 508 (February 9, 2006)(*citing Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)). However, the failure to "discuss and evaluate . . . particularly important evidence" constitutes grounds for remand. *Walker v. Commissioner of Social Sec.,* 2015 WL 357142, at *7–8 (E.D.Mich January 27, 2015)(Steeh, J.)(failure to discuss imaging studies supporting claimant's allegations of limitation reversible error); *see also Ehrlich v. Commissioner of Social Security*, 2018 WL 442329, at *5 (S.D.Ohio January 16, 2018)(ALJ's failure to acknowledge an entire line of evidence "suggests that his review of the record was incomplete")(*citing Dyer v. Berryhill*, 237 F. Supp. 3d 772, 776 (N.D. Ill. Feb. 21, 2017)).

The facts of this case, considered in the aggregate, support the argument for remand. The ALJ stated at the hearing that the transcript did not contain any support for Plaintiff's allegations of ankle pain (Tr. 51). She acknowledged that the records submitted as of the time of the hearing were inadequate to assess Plaintiff's allegations, and properly ordered additional consultative examinations to obtain a "baseline" of Plaintiff's condition (Tr. 61). At the direction of the ALJ, Dr. Geoghegan performed a consultative examination, observing decreased strength in the lower left extremity and a "severe left-sided limp" (Tr. 377). Based on the examination, Dr. Georghegan found that Plaintiff was limited to standing for one hour in an eight-hour workday, reflecting a greater degree of limitation than stated in either the hypothetical question forming the basis of the RFC or the alternative sedentary hypothetical question posed by the ALJ.

The ALJ's rejected Dr. Geoghegan's finding that Plaintiff was limited to only one hour walking in an eight-hour period on the basis that it was not supported by the objective

-14-

medical evidence (Tr. 27-28). However, the subsequently created imaging studies showing severe abnormalities of the foot and surrounding joints stands directly at odds with her "no objective evidence" finding[5] (Tr. 406). The fact that she did not acknowledge the imaging studies, coupled with her erroneous finding that Dr. Geoghegan's limitations in standing were not supported by the objective evidence, supports the inference that she overlooked the newer evidence which supports both Dr. Geoghegan's findings and Plaintiff's allegations of limitation. Because the unacknowledged imaging studies and Dr. Geoghegan's findings reflect a significantly greater level of restriction than that found in either the RFC or the ALJ's alternative, sedentary hypothetical question to the VE, the failure to consider the imaging studies requires a remand for further proceedings.

Defendant's arguments that the ALJ's findings constituted at most harmless error are not well taken. Defendant cites *Social Security Administration, Hearings, Appeals, and Litigation Law Manual* (*"HALLEX"*), § I-2-1-20(B)(3), which states that "when an ALJ issues a less than fully favorable decision . . . [a]n exhibit list in final form is required . . . to protect the claimant's due process rights." *Defendant's Brief* at 7-8; https://www.ssa.gov/OP_Home /hallex/I-02/I-2-1-20.html. (Last visited August 2, 2018). Defendant points out that the exhibit index following the ALJ's determination lists the pertinent exhibit. *Id.* (*citing* Tr. 35). This argument fails for two reasons. First, *HALLEX,* a guide to the SSA's internal procedures, is not binding on the courts. *Bowie v. Commissioner of Social Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Second, although disputed exhibit was listed among those presented for consideration by the ALJ, her failure to cite the imaging studies points to the conclusion that the critical evidence found in Exhibit 8F was in fact overlooked.

---

[5] I note that Dr. Geoghegan's observation of reduced muscle strength in the lower left extremity also constitutes an "objective finding" (Tr. 375-376).

Defendant also contends that the imaging studies showing the presence of a condition "say nothing about whether an impairment affects a claimant's ability to work." *Id.* at 8-9 (*citing Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988))("'mere diagnosis of arthritis, of course, says nothing about the severity of the condition'"). However, this argument fails for multiple reasons. First, in this case, the interpretative comments from the CT examination state that the condition of osteoarthropathy is "severe," in contrast to *Higgs* where the imaging studies showed only "mild" arthritis. *Id.* at 863; (Tr. 406). Second, unlike *Higgs*, the question here is not how the ALJ interpreted the evidence (which would be well within her purview) but rather, whether she overlooked it entirely. While Defendant argues that the exhibit at issue also contains a treating observation that Plaintiff had no trouble standing or walking (Tr. 396), it is unclear whether Plaintiff actually denied problems standing or walking in activities of daily living, or the treating source did not note such problems during the course of the examination. For example, while the same treating source noted no limitations in walking or standing as of September, 2014 (Tr. 353), records from less than two months later note that a stress test was canceled due to Plaintiff's inability to walk for extended periods (Tr. 344).

Finally, I note with some concern that the ALJ also discounted Dr. Geoghegan's October, 2015 findings on the basis that "the record does not contain evidence to support this opinion back to the alleged onset of disability in 2012" (Tr. 28). She is correct that some of the earlier records stand at odds with Plaintiff's allegations of disability. The ALJ noted Plaintiff's January, 2015 report that he was "completely unlimited" in daily activities until three months earlier (Tr. 27, 340). However, the fact that Dr. Geoghegan's records may not support a finding of disability as of January, 2012 does not establish that Plaintiff was not disabled for a period of 12 months or more between the alleged onset date and the March 2,

2016 determination. "In determining whether [a claimant] is entitled to disability benefits, it is also necessary to consider every [12-month] period during which Plaintiff may have been disabled" *Pena v. Barnhart*, 2002 WL 31487903, *11 (S.D.N.Y. October 29, 2002); 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). "'[I]n a closed period case, the [ALJ] determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision....'" *Lozada-Rivera v. CSS*, 2015 WL 400908, at *3 (E.D. Mich. January 28, 2015)(Tarnow, J.)(*citing Campbell v. CSS*, 2011 WL 2160460, at *4 n. 4 (E. D. Mich. June 1, 2011) )(Duggan, J.)(*citing Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002)). The ALJ's finding that Dr. Geoghegan's opinion lacked merit because it did not establish disability from the alleged onset date through the day of decision mis-states the standard for determining disability.

Notwithstanding these findings, a remand for further proceedings rather than an award of benefits if appropriate. While a remand to the administrative level is warranted for the reasons set forth above, a remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v.HHS,* 17 F.3d 171, 176 (6th Cir. 1994).

Aside from the errors discussed above, there is is a latent question as to whether or not was engaged in Substantial Gainful Activity for the relevant period (Tr. 21). While Plaintiff's FICA summary shows no reported income from 2010 forward (Tr. 185), Plaintiff testified that he formerly earned unreported income as a paver (Tr. 63). Although he alleged disability as of January, 2012, April, 2013 treating records state that Plaintiff was concerned about lead exposure, due to the fact that he "currently work[ed] in a car restoration shop" where his hands and arms were exposed lead paint chips (Tr. 269). In July, 2013, Plaintiff reported that he had recently spent time "working in the woods" and "outside cutting

grass" on an out-of-state trip (Tr. 260). Dr. Dickson's January, 2014 consultative findings state that Plaintiff held a Michigan chauffeur's license[6] (Tr. 297). In January, 2015, Plaintiff reported that he was self-employed making fishing sinkers and lures (Tr. 340). While Plaintiff testified that his work activity consisted only of "odd jobs," when he felt "well enough," (Tr. 44) there is a question, more appropriately addressed to the ALJ on remand, as to whether his work activity rose to the level of Substantial Gainful Activity for a portion of the relevant period. A remand for benefits prior to the resolution of the unresolved factual issues would be premature. As such, I recommend a remand for further administrative proceedings consistent with the above analysis.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #20] be DENIED and that Plaintiff's Motion for Summary Judgment [Docket #19] be GRANTED to the extent that the case is remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

---

[6] Under Michigan law, a chauffeur's license is required for the following activity: (1) "employ[ment] for the principal purpose of operating a motor vehicle with a gross vehicle weight rating ("GVWR") of 10,000 pounds or more, (2) "[o]perat[ing] a motor vehicle as a carrier of passengers or as a common or contract carrier of property, and, (3) [o]perat[ing] a bus or a school bus." http://www.michigan.gov/sos. (Last visited August 2, 2018).

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: August 3, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 3, 2018, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen